IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID SPOTSVILLE,            §
TDCJ-CID NO.01133950,        §
          Plaintiff,         §
v.                           §   CIVIL ACTION NO. H-09-3583
                             §
JAMES MILLER, et al.,        §
                             §
          Defendants.        §

MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed his fourth amended verified complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights and state law. (Docket Entries No.60, No.63).  Pending are Christopher Freeman and Samuel Prater's Motion for Summary Judgment (Docket Entry No.80), and David Hall and Patrick Kelley's Motion for Summary Judgment. (Docket Entry No.78).  Plaintiff has filed a response to each motion. (Docket Entries No.84, No.85).

For the reasons to follow, the Court will grant defendants' motions for summary judgment and dismiss this case with prejudice.

I. BACKGROUND

The following facts are undisputed:  On February 11, 2008, City of Houston Police Officer David Hall observed plaintiff violating a traffic ordinance and pulled over his vehicle. (Docket Entries No.60, page 3; No.78-1, page 7; No.78-8, pages 1-2; No. 85, page 2). Plaintiff exited the vehicle, identified himself, and informed Officer Hall that he did not have a valid driver's license or insurance. (Docket Entries No.78-1, page 7; No.78-2, page 2).  Hall

arrested plaintiff for the traffic violations and searched him. (Docket Entries No.78-1, page 7; No.78-2, page 2; No.85, page 2). Hall found less than a gram of crack cocaine in plaintiff's jacket.[1] (Docket Entries No.78-1, page 7; No.78-2, page 2; No.60, page 3; No.85, page 2). Although cuffed, plaintiff ran from Hall; Hall caught him within fifty yards from where the chase began. (Docket Entries No.78-1, page 7; No.78-2, page 2; No.85, page 2). While escorting plaintiff back to the patrol car, Hall observed plaintiff's girlfriend Kimberly Pete drive away in plaintiff's car. (Docket Entries No.78-1, page 7; No.78-2, page 2; No.85, page 2). Hall radioed for assistance and Officer Patrick Kelley responded. (Docket Entries No.78-1, page 7; No.78-2, page 2). Plaintiff told Hall that he and Pete were staying at a local motel and Hall gave this information to Officer Kelley. (Id.). Kelley located Pete at the motel and took her into custody. (Docket Entries No.78-8, page 2; No.78-9, page 2). Hall drove plaintiff to the motel where they met Officer Kelley and Pete. (Docket Entries No.78-1, page 7; No.78-2, page 2; No.78-9, page 1; No.85, page 2). Because Pete had parked plaintiff's car at a warehouse and not at the motel, the officers drove their patrol cars to the warehouse to arrange for plaintiff's car to be inventoried and towed. (Docket Entries No.60, page 3; 78-8, page 2; 78-9, page 2).

Plaintiff had previously "crossed paths" with Officer Kelley;

---

1 Hall attests that he field-tested the crack rock in plaintiff's jacket with a cocaine test kit and the kit tested positive for cocaine. (Docket Entry No.78-1, page 8).

Kelley knew from another encounter that plaintiff often concealed drugs in his mouth.[2]  (Docket Entry No.63, page 2).  Pete confirmed this fact when she told Officer Kelley, while in his custody, that plaintiff "usually 'holds dope in his mouth' and that he'd even go to the County jail and sell it when he got out."  (Docket Entry No.78-9, page 3).  Kelley relayed this information to Officer Hall. (Docket Entry No.85, page 2).  Hall advised Kelley that he located a crack rock on plaintiff and that plaintiff fled from him on foot. (Docket Entries No.78-8, page 2; No.85, page 1).  Hall was also aware that approximately two weeks before this incident, a narcotic suspect had died from swallowing cocaine while in Officer Kelley's custody.  (Docket Entries No.78-8, page 2; No.78-9, page 2; No.85, page 3).

Both officers believed that plaintiff had swallowed crack cocaine.  (Docket Entries No.60, page 4; No.78-8, page 2; No.78-9, page 2; No.80-1, page 12; No.80-2, pages 10, 13).  Kelley advised Hall to call the Houston Fire Department because plaintiff was displaying the same symptoms as the suspect who had died in Kelley's

2 In an unverified supplement, plaintiff claims Officer Kelley and another officer searched him and two associates in July 2007.  One associate was arrested for possession of a crack pipe.  This associate told Kelley that plaintiff had concealed drugs in his mouth.  The officers searched plaintiff's mouth for several minutes but they could not find any drugs.  Plaintiff was released. Thereafter, plaintiff claims he and Kelley crossed paths six to ten times. Plaintiff claims that Kelley always harassed him by making plaintiff open his mouth so that Kelley could search for drugs.  (Docket Entry No.63, pages 1-2).

Kelley attests he knew Pete and plaintiff from prior arrests; he also knew that plaintiff was known as "Boobie" and that Pete called him "Boobie."  (Docket Entry No.78-9, page 3).  Kelley attests that he had "previously been at a narcotics arrest where Plaintiff had tried to swallow narcotics which required that [Kelley] take him to the hospital for treatment."  (Id.).

3

custody. (Docket Entries No.78-9, page 2; No.85, page 3). Hall called dispatch and requested an ambulance. (Docket Entries No.78-1, page 8; No.78-8, page 2). Paramedics were notified at 11:30 p.m. of the emergency and arrived at the scene nine minutes later. (Docket Entry No.78-2, page 2). Paramedics examined plaintiff; they noted that he was running from law enforcement when he stated that he had swallowed four to six rocks of cocaine. (Docket Entries No.78-2, page 2; No.80-1, page 12). Paramedics administered oxygen to him en route to the hospital, where they arrived at 12:04 a.m. (Id.). Paramedics made no mention in their notes that plaintiff had bruises or scrapes to his neck, bleeding from his mouth, loose teeth, or a cut lip.

Plaintiff was admitted to the emergency department of the hospital on February 12, 2008. (Docket Entry No.80-1, pages 15, 16). Paramedics informed hospital staff that plaintiff had swallowed four to six crack rocks while being chased and that he was now experiencing chest pain and nausea. (Id., page 16). Plaintiff was cuffed and accompanied by Officer Hall. (Docket Entries No.63, page 2; No.80-2, page 14). Officer Kelley transported Pete to jail and completed the booking process. (Docket Entries No.63, page 2; No.78-1, page 10; No.78-9, page 2).

Plaintiff was placed in a main medical resuscitation room; he was handcuffed to the bed, where he sat unaided on a propped up hospital bed with an officer close beside. (Docket Entry No.80-1, page 16).

4

Plaintiff was initially seen by Dr. Samuel Prather, who was a resident at the hospital. (Docket Entry No.80-4, page 3). Before examining plaintiff, Prather reviewed the triage nurse's notes, which indicated that plaintiff complained of "chest pain, shortness of breath, and nausea, and that he had swallowed four to six crack cocaine rocks while being chased by the police." (Id.). Paramedics and one HPD officer separately confirmed to Prather that plaintiff had told them that he had ingested the crack rocks. (Id.). Prather concluded that the physical complaints plaintiff initially presented were consistent with the ingestion of crack cocaine. (Id.). Plaintiff was placed on oxygen, monitors, and an IV. (Docket Entry No.8-1, page 9).

After the initial examination, Prather attests, he "had a reasonable belief" that plaintiff had ingested cocaine based on the paramedics reports and plaintiff's symptoms. (Docket Entries No.80-3, page 2; No.80-4, page 3; No.85, page 3). Prather ordered additional tests, including a drug screen, to further evaluate plaintiff's condition. (Docket Entry No.80-3, pages 2-3). Prather called the poison control center, which recommended that plaintiff be given charcoal to absorb the crack cocaine and to counteract the symptoms plaintiff was presenting. (Docket Entry No.80-4, page 3).

Prather conferred with Dr. Christopher Freeman, the attending physician, about the need to administer the charcoal. (Docket Entries No.80-4, page 3; No.84, page 3; No.85, page 3). Prather and Freeman determined that a nasal gastric tube should be inserted in

plaintiff's nose to administer the charcoal because plaintiff refused to drink the charcoal. (Docket Entries No.80-4, page 3; No.84, page 4; No.85, page 4). The nasal gastric tube was inserted and plaintiff was administered a dose of charcoal at 1:45 a.m. (Docket Entries No.80-1, page 18; No.80-4, page 4).

Dr. Freeman began his physical examination of plaintiff. (Docket Entries No.80-4, page 3; No.85, page 4). At some point, Officer Kelley arrived at the hospital after transporting and booking Pete into jail. (Docket Entries No.78-9, page 2; No.63, page 2).

Dr. Freeman asked plaintiff to open his mouth but plaintiff would not cooperate. (Docket Entry No.60, page 4; No.80-3, page 3; No.80-4, page 4; No.84, page 4; No.85, page 4). Freeman informed plaintiff that he was going to give him medication to sedate him. (Docket Entries No.84, pages 4-5; No.80-3, page 3).

Plaintiff was given medication to sedate him through an IV at 1:56 a.m. and 2:06 a.m. (Docket Entries No.60, page 5; No.63, page 2; No.80-1, page 18; No.80-4, page 5). At 2:10 a.m., a bag of white substance was retrieved from under plaintiff's tongue. (Docket Entry No.80-1, page 19).

Plaintiff awoke from the sedative with no apparent complications but because the doctors were concerned that plaintiff might have ingested a toxic dose of an unknown substance, they administered another dose of charcoal per instructions by the poison control center. (Docket Entries No.80-3, page 3, No.80-4, page 5).

6

In all, plaintiff was given two doses of charcoal, an abdominal x-ray, and observed in the emergency department for seven hours for clinical reassessment for signs or symptoms of a toxic ingestion. (Docket Entries No.80-1, page 18; No.80-3, page 3, No.80-4, pages 5-6). Because plaintiff's pain and rapid heartbeat had subsided and he did not demonstrate any symptoms of toxic ingestion, plaintiff was discharged from the hospital in police custody. (Docket Entries No.80-3, page 3).

## II. CLAIMS

Plaintiff alleges the following, which defendants dispute: Officers Hall and Kelley searched him a second time at the warehouse where plaintiff's car was located. (Docket Entry No.60, page 3). During this search, Officer Hall pulled back plaintiff's head and placed his knee in plaintiff's back while Officer Kelley choked plaintiff and dug his fingernails in the skin around plaintiff's throat. (Id.). Kelley also hit plaintiff in the mouth with a flashlight and searched for drugs even though plaintiff told the officers that he did not have any. (Id., pages 3-4). Plaintiff gasped for air as Kelley choked him. Even though they did not see any drugs in plaintiff's mouth, the officers surmised that plaintiff had swallowed drugs because he was gasping for air. (Id., page 4). Plaintiff claims his mouth was "busted up" and he had scratches and bruises around his neck from the officers' second search. (Docket Entry No.63, page 2).

At the hospital, plaintiff consented to an x-ray and stomach

pump to prove that he had not swallowed anything.  (Id.).  The medical staff proceeded to x-ray and to pump plaintiff's stomach but did not find anything.  (Id.).  When Officer Kelley arrived at the hospital after transporting Kimberly Pete to jail, he advised Doctors Freeman and Prather that plaintiff was known for concealing drugs in his mouth.  (Docket Entry No.63, page 2).  The doctors and Officer Hall told Kelley that plaintiff's stomach had been pumped and that no drugs had been found.  (Id.).  The doctors questioned plaintiff, who again denied that he had concealed drugs in his mouth.  (Id.).  Nevertheless, the doctors and the police officers ordered plaintiff to open his mouth so that they could conduct another search; plaintiff refused because he had already been detained for two hours and had denied secreting drugs in his body.  (Id.).

The officers convinced the doctors that plaintiff was hiding something and encouraged the doctors to sedate plaintiff so they could search his mouth.  (Id.).  Plaintiff refused to sign a consent form to administer drugs to sedate him; he instructed defendants that if they wanted to conduct a body cavity search they would need a search warrant.  (Id., page 5).  The officers became angry; they wrestled plaintiff and cuffed his hands to the bed while the doctors injected the drug Propofol into plaintiff's body without his consent.  (Id.).

Plaintiff did not suffer any injury from the stomach pumping or from being wrestled by the officers; he claims, however, to suffer

severe headaches, dizzy spells, blurry vision, high blood pressure, loss of thought, and slow reaction time from the medication used to sedate him.  (Id.).  He also claims that defendants' conduct has caused him severe emotional distress and mental anguish.  (Id.).

Plaintiff seeks declaratory relief and compensatory and punitive damages on the following grounds:

1.   Defendants engaged in an unreasonable search and seizure and used excessive force against him in violation of the Fourth Amendment;

2.   Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment;

3.   Defendants violated the Fourteenth Amendment's equal protection and due process clauses; and

4.   Defendants committed assault and battery, medical malpractice, gross negligence, and violated his right to informed consent.

(Docket Entry No.60, pages 6-7).

Defendants Hall and Kelley and defendants Freeman and Prather move for summary judgment, asserting the defenses of immunity. (Docket Entries No.78, No.80).

### III. DISCUSSION

Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide

9

Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

## A. Individual Capacity Claims

Defendants assert their entitlement to qualified immunity for claims against them in their individual capacity. (Docket Entries No.78, No.80). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). "[T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596,

10

599 (2004) (quotation marks omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).

### 1. Fourth Amendment

Because plaintiff was in the custody of the arresting officers at the time of his search and while at the hospital, his claims regarding search and seizure and excessive force arise under the Fourth Amendment. See Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

### a. Search and Seizure

The Fourth Amendment protects citizens from searches and seizures without probable cause. U.S. CONST. amend. IV. Plaintiff claims that defendants conducted a warrantless search of his mouth without reasonable suspicion or probable cause. (Docket Entries No.60, pages 4, 5; No.63, pages 2, 3).

### i. Hall and Kelley

Defendants Hall and Kelley contend that plaintiff's search and seizure claim against them is an impermissible collateral attack on his conviction for possession of a controlled substance and is therefore barred by the favorable termination requirement of Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994). (Docket Entry No.78, page 11). In Heck, the Supreme Court held that when a

11

plaintiff alleges tort claims against his arresting officers, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 486, 114 S.Ct. at 2372. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

The uncontroverted record in this case shows that Officer Hall recovered 0.22 grams of crack cocaine from plaintiff's jacket and 4.47 grams of crack cocaine from a bag located in plaintiff's mouth.[3] (Docket Entry No.78-1, page 9). Plaintiff later entered a guilty plea to the charge of possession of 1 to 4 grams of cocaine in the 176th State District Court of Harris County, Texas, in cause number 11534409; on October 12, 2009, he was found guilty of the offense and sentenced to fifteen years confinement in the Texas Department of Criminal Justice-Correctional Institutions Division. (Docket Entry No.78-3, page 1). Under the exclusionary rule of the Fourth Amendment, the larger packet of cocaine recovered from plaintiff's mouth would be subject to exclusion if this Court entered a judgment in favor of plaintiff's claim. See U.S. v. Grosenheider, 200 F.3d 321, 327 (5th Cir. 2000) (stating that "[t]he exclusionary rule of the Fourth Amendment generally prohibits the introduction at trial of not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence discovered later that

---

3  The City of Houston Police Department Laboratory determined the actual amount of cocaine in the two rocks to be .02 grams and 3.6 grams of cocaine.  (Docket Entry No.78-1, page 11).

is derivative of an illegality, or constitutes 'fruit of a poisonous tree'"). Therefore, any such judgment would imply the invalidity of his conviction for possession of 1 to 4 grams of cocaine.

The record does not show, and plaintiff does not allege, that his conviction for possession of cocaine has been reversed or invalidated. Public records show that the Texas Court of Criminal Appeals denied plaintiff's state habeas application on February 10, 2010, without written orders on the trial court's findings without a hearing.[4] Texas Courts Online.[5]

Accordingly, defendants Hall and Kelley are entitled to summary judgment on these claims.

### ii. Freeman and Prather

Defendants Freeman and Prather contend that plaintiff's search and seizure claim against them is without merit because they had a reasonable basis to believe the bag in plaintiff's "mouth contained more crack cocaine as they were already treating him for suspected ingestion of four to six crack rocks, and the bag contained what appeared to be a white substance." (Docket Entry No.80, page 20). They further contend their actions in treating plaintiff were objectively reasonable and based on medical necessity. (Id.).

Plaintiff does not dispute that he arrived at the hospital via

---

4 The record shows that the state district court, sitting as a habeas court, explicitly found that plaintiff's challenge to the constitutionality of a specific search and seizure was not cognizable on habeas review. (Docket Entry No.78-4, page 1).

5 http:www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2397985 (viewed June 26, 2012).

an ambulance on a report that he had ingested crack cocaine, or that the doctors believed that he had ingested crack cocaine based on such reports. Although plaintiff denies having told anyone that he had ingested drugs (Docket Entry No.84, page 3), he admitted in an affidavit, dated February 28, 2008, that "[t]hey knocked me out against my own will after I told them I was on crack, powder cocaine and alcohol." (Docket Entry No.80-2, page 11). He concedes in his response to the motion for summary judgment that "the doctors thought that they were doing the right thing by giving plaintiff charcoal" based on the information they had been given by paramedics. (Docket Entry No.84, page 4).

Plaintiff, however, disputes Dr. Freeman's and Prather's attestations regarding the discovery of the packet of cocaine in his mouth, their attempts to retrieve the packet, and the events that led up to the forced sedation.[6] Dr. Freeman attests that when he examined plaintiff's neck and head, he "saw multiple bags, approximately 3-4 cm in diameter, underneath [plaintiff's] tongue in deep crypts or pockets." (Docket Entry No.80-3, page 3). Prather

6 Plaintiff also claims he heard the doctors and officers talking about sedation and then medical staff asked him to sign a consent form, which he refused. (Docket Entry No.60, pages 4-5; No.63, page 2; No.84, page 4).

Plaintiff contends that Kelley, who had a personal vendetta against him, enticed, intimidated, and persuaded Doctors Freeman and Prather and Officer Hall "to conspire with him to illegally sedate Spotsville" without a warrant or probable cause to search his mouth for drugs. (Docket Entries No.60, page 5; No.63, page 2; No.85, page 15). Plaintiff contends the drugs were never in plain view and there was never a clear indication that he had swallowed or concealed drugs in his mouth. (Docket Entries No.63, page 2; No.85, page 15).

14

attests that Freeman asked him to observe the object, which he did.[7] (Docket Entry No.80-4, page 4). Both doctors attest that once plaintiff became aware that Freeman spotted the bag, he closed his mouth and clenched his jaw shut. (Docket Entries No.80-3, page 3; No.80-4, page 4). Freeman also attests to the following: He asked plaintiff to open his mouth so that he could remove the bags, but plaintiff refused to cooperate. (Docket Entry No.80-3, page 3). He informed plaintiff of the dangers plaintiff faced if the bags were not removed; plaintiff nodded in affirmation but refused to open his mouth. (Docket Entry No.80-3, page 3). After multiple attempts to get plaintiff to open his mouth, Freeman informed plaintiff that he would have to give plaintiff medication to sedate him so Freeman could remove the bags. (Docket Entry No.80-3, page 3). Plaintiff "started to make swallowing motions in an attempt to swallow the bags with his mouth closed." (Id.). "To prevent his swallowing of the unknown substance, and to prevent a possible toxic ingestion, I sedated him to safely remove the foreign body." (Id.).

Dr. Freeman also attests that he "was not ordered by the Houston police officers that accompanied Mr. Spotsville to the hospital to sedate him. The decision to sedate Mr. Spotsville was based solely on medical necessity." (Docket Entry No.80-3, page 3). Hospital records show that no consent was given due to patient's condition. (Docket Entry No.80-1, page 8).

---

7 Prather attests that he saw a "cellophane-type wrapper twisted into a bag shape and containing a white substance." (Docket Entry No.80-4, page 4). Prather attests that he had missed the object on his initial examination; he did not think that plaintiff had anything in his mouth because he was able to speak clearly during the initial examination. (Id.).

15

Officer Hall's Offense Report is consistent with Dr. Freeman's attestations.[8] (Docket Entry No.78-1, page 8).

Plaintiff's stomach was not pumped or suctioned by medical personnel at the hospital. (Docket Entries No.80-4, page 6). Medical records show that plaintiff's abdomen was x-rayed at 6:29 a.m., after plaintiff was sedated and the bag of cocaine was removed from his mouth at 2:10 a.m. (Docket Entries No.80-1, page 24; No.80-3, page 3; No.80-4, page 6).

Plaintiff contends that Doctors Prather and Freeman fabricated their affidavits and that Officers Kelley and Hall fabricated the police report. (Docket Entries No.63, page 2; No.84, page 6; No.85, page 6, 7). He proffers no evidence to support this contention or to refute the medical records.

The "reasonableness" Fourth Amendment inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Richardson, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872 (1989). Although plaintiff frames the unconsented sedation as a forcible search for drugs, his pleadings and exhibits do not show that either the officers or doctors subjected him to the forcible extraction of the

---

8 Officer Hall reported that Dr. Freeman advised Hall that Freeman observed an unknown object under plaintiff's tongue during his examination of plaintiff. (Docket Entry No.78-1, page 8). Hall also reported that Dr. Freeman told him that plaintiff was uncooperative and Freeman gave plaintiff an unknown medication and was able to retrieve a bag containing several white rocks that appeared to be crack cocaine. (Id.) Hall further reported that Dr. Freeman also told him that plaintiff may have swallowed another bag that was under his tongue. (Id.).

16

packet in his mouth for the purpose of obtaining evidence to be used in a subsequent criminal trial. *See* United States v. Owens, 475 F.2d 759, 760 (5th Cir. 1973) (finding force stomach pumping constitutional to respond to medical need and not to gather evidence). The record shows that Doctors Freeman and Prather were treating a person in police custody, who they determined to be in grave danger from ingestion of a toxic substance, who refused to cooperate with their efforts to remove a foreign object from his mouth, which they thought to be toxic, and who attempted to swallow the foreign object when informed of Dr. Freeman's decision to sedate him.

"The fourth amendment does not bar warrantless intrusions where government officials reasonably believe the intrusion is necessary to deal with a life-threatening emergency. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency of emergency.'" United States v. Borchardt, 809 F.2d 1115, 1117 (5th Cir. 1987) (citations omitted). Under the circumstances in this case, the doctors' actions were objectively reasonable.

Moreover, clearly established law requires the State to provide pretrial detainees with basic human needs, including medical care and protection from harm. *See* Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). Accordingly, Doctors Freeman and Prather are entitled to qualified immunity. *See* Stokes v. Porretto, Civil Action No.G-04-0596, 2006 WL 2844172 at *15 (S.D. Tex. Sept. 29, 2006)

(citing Saucier v. Katz, 533 U.S. 194, 202 (2001)).

### b. Excessive Force

To state an excessive-force claim under the Fourth Amendment, plaintiff must show that he (1) suffered some injury, that (2) resulted directly from force that was clearly excessive to the need for force, and (3) the use of that force was objectively unreasonable. Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008); Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999), *decision clarified on rehearing*, 186 F.3d 633 (5th Cir. 1999). The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id., 490 U.S. at 396, 109 S.Ct. 1865. The test of reasonableness "requires of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. 490 U.S. at 396, 109 S.Ct. at 1872.

### i. Search at the Warehouse

In his verified complaint, plaintiff alleges that Officers Hall and Kelley conducted a second search that was excessive to the need.

18

(Docket Entry No.60, page 3). Plaintiff claims that

> Officer Hall pulled back plaintiff['s] head and placed his knee in plaintiff['s] back while Officer Kelly [sic] choked plaintiff and dug his fingernails in the skin around plaintiff's throat. Kelly [sic] hit plaintiff in the mouth with a flashlight and searched for drugs without justification or probable cause even when plaintiff told them that he did not have any drugs in his mouth.

(Id., pages 3-4).

Hall and Kelly deny any such contact or injury and attest to a different version of the events that occurred that day that makes no mention of a second search or use of force.[9] (Docket Entries No.78-8; No.78-9). Their attestations are consistent with the offense reports that they submitted soon after the incident. (Docket Entry No.78-1).

In his response to Hall and Kelley's motion for summary judgment, which is not verified, plaintiff states that the officers questioned where he hid the rest of the crack cocaine, and he denied having any. (Docket Entry No.85, page 3). Plaintiff states that he became dizzy and faint when Hall pulled back his head and kneed him and Kelley choked him. He claims at that time, Kelley hit him in the mouth with a flashlight, "busting" his mouth.[10] Plaintiff claims that Kelley stated, "Spit it out I already know it's in there." (Id.).

---

9 Officer Kelley attests that Kimberly Pete told him while she was in his custody that plaintiff usually holds dope in his mouth; Kelley also attests that he had "previously been at a narcotics arrest where Plaintiff had tried to swallow narcotics which required that I take to the hospital for treatment." (Docket Entry No.78-9, page 3). Kelly further attests that he told Officer Hall at the scene that plaintiff exhibited the same symptoms as a man who had died from a drug overdose a week earlier while in Kelley's custody. (Id., page 2).

10 Plaintiff later describes his injuries this alleged use of force as choking from Hall pulling his head back and kneeing him in the back and Kelley digging his fingernails in the skin around plaintiff's throat as they searched his mouth for drugs. (Docket Entry No.85, page 19).

Plaintiff gasped for air but the officers made him open his mouth as they repeatedly looked in his mouth with a flashlight.  (Id.). Plaintiff claims that at that time, Hall told Kelley that he did not see any crack and Kelley said, "That's because he swallowed it." (Id.).  At that time, Kelley told Hall to call an ambulance because he did not need another person to die on him."  (Id.).

"Whenever a detainee is physically searched by an officer, a physical confrontation inevitably results."  Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999).  To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*.  Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007).  The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and 'is directly related to the amount of force that is constitutionally permissible under the circumstances.'"  Id. at 416 (quoting Ikerd v. Blair, 101 F.3d 430, 435 (5th Cir. 1996)).  If the force used is constitutionally permissible, *i.e.*, objectively reasonable, the plaintiff has not, by definition, suffered a cognizable injury and his injury is by definition *de minimis*.  Ikerd, 101 F.3d at 434; *see also* Williams, 180 F.3d at 704.

In the specific context of reviewing an officer's use of force upon a suspect who is hiding evidence, even when an officer knows that a "suspect is concealing contraband, [that] does not authorize government officials to go to any and all means at their disposal to retrieve it."  U.S. v. Cameron, 538 F.2d 254, 258 (9th Cir. 1976).

If a suspect attempts to swallow evidence, law enforcement may hold his throat, pinch his nose shut, and apply pressure to his jaw to retrieve the evidence. Epinsoza v. United States, 278 F.2d 802 (5th Cir. 1960). Although police officers can use reasonable force to prevent the swallowing of evidence, they may not constitutionally beat and choke suspects in order to gain that evidence. Thompson v. Sarasota Cnty Police Dep't, Civil Action No.8:09-CV-585-T-30TBM, 2009 WL 1850314 at *4 (M.D. Fla. June 26, 2009).

In this case, the undisputed evidence reflects that the officers were aware of plaintiff's propensity to conceal drugs in his mouth and the possibility of death from ingesting the same. Based on plaintiff's history, his conduct in fleeing from Officer Hall, and the discovery of a crack rock in his jacket, the officers had probable cause to believe that plaintiff might have concealed more drugs in his mouth and that he might have swallowed them. Under such circumstances, a reasonable officer would effect a search of the suspect's mouth, not only to recover evidence but for plaintiff's safety.

According to plaintiff, the officers applied pressure to his mouth, throat, and back to force him to open his mouth and released such pressure when he opened his mouth. Finding no drugs after searching plaintiff's mouth with a flashlight, the officers concluded that plaintiff had swallowed the drugs and called for an ambulance.

Although plaintiff complains of dizziness, gasping for air, and a busted lip, he does not dispute that neither the paramedic report dated February 12, 2008, nor the triage nurse's notes from the

emergency department of the hospital, which were entered the same day, reflect any blood, any injury to his face, neck, or chest, or any complaint regarding the same.[11] (Docket Entry No.78-2, pages 5-27). Moreover, he does not deny that neither Dr. Prather nor Dr. Freeman noted any injury to plaintiff's face, mouth, neck, or back. (Docket Entries No.78-5, No.78-6).

In this context, the Court finds that plaintiff's alleged injuries were *de minimis*. *See* Williams, 180 F.3d 699 (5th Cir. 1999) (fleeting effects of dizziness and loss of breath from first choking was *de minimis*); Siglar v. Hightower, 112 F.3d 191, 194 (5th Cir. 1997) (bruised ear that resulted from an officer twisting the plaintiff's ear was *de minimis*); Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) (bruised wrists from handcuffs were *de minimis*); Lee v. Wilson, 237 Fed. App'x 965 (5th Cir. 2007) (busted lip). *Cf.* Gomez v. Chandler, 163 F.3d 921, 924-25 (5th Cir. 1999) (scrapes, bruising to head and body after slammed to concrete floor, which required medical treatment, were not *de minimis* where guards continued to strike prisoner after he stopped resisting).

Accordingly, defendants Hall and Kelley are entitled to qualified immunity on plaintiff's excessive force claim.

11 The paramedics noted their initial impression as "POISONING/DRUG INGESTION: Nothing Further." (Docket Entry No.80-1, page 12). Hospital Nurse Laura Neel noted that plaintiff "[a]ppears in no apparent distress, comfortable, well developed, well nourished, well groomed." (Docket Entry No.80-1, page 6). She also noted that he had swallowed crack rocks and that he reported shortness of breath but his respiratory effort was even. (Id.).

## ii. Search at the Hospital

The police officers and the doctors have presented unrefuted, competent summary judgment evidence that they reasonably believed that plaintiff had swallowed crack cocaine and that he had concealed crack cocaine in his mouth, which if ingested, could cause him to suffer serious injury or death.

Reviewing the record and allegations and considering them in plaintiff's favor does not raise a fact issue as to whether plaintiff suffered an injury from the force allegedly expended by Officers Kelley and Hall when they "wrestled him down and handcuffed both of his hands to the hospital bed" so that doctors could sedate him by giving him medication through an IV. Nor does plaintiff proffer any summary judgment proof to contravene the medical record, which shows that the medication used to sedate him was administered through an IV. See Freeman, 483 F.3d at 416 (to state an excessive force claim, plaintiff must assert an injury, which is more than de minimis).

Likewise, reviewing the record in plaintiff's favor does not raise a fact issue with respect to the use of force by Doctor Prather. The undisputed summary judgment evidence reflects that Dr. Freeman, and not Dr. Prather, ordered and administered the sedation to plaintiff. (Docket Entries No.80-3, page 3; No.84, page 4). Because Dr. Prather, who was a subordinate to Freeman, was not personally involved in ordering and administering the sedative to plaintiff, plaintiff fails to state an excessive force claim against him. See McConney v. City of Houston, 863 F.2d 1180, 1183 (5th Cir.

23

1989) (no evidence defendant had any personal involvement with events respecting plaintiff).

Finally, the record does not raise a fact issue regarding the reasonableness of Dr. Freeman's conduct in sedating plaintiff. Freeman attests that he made such decision based on his professional judgment as board certified emergency medicine physician, who "in light of all the evidence available at the time, . . "reasonably and objectively believed Mr. Spotsville to be an imminent threat to himself." Freeman attests that because plaintiff was uncooperative, he "was a threat to himself and his own judgment was compromised by his fear of incarceration. It was medically in his best interest to have the substance removed before he suffered the toxic effects of the substance." (Docket Entry No.80-3, page 3).

Accordingly, defendants are entitled to qualified immunity on plaintiff's excessive force claim.

## 2. Other Constitutional Rights

Because plaintiff was a detainee in February 2008, when he alleges the events at issued occurred, he had no clearly established right under the Eighth Amendment's prohibition against cruel and unusual punishment. See Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401 (1977) (Eighth Amendment provides claims only for those who have been criminally convicted). As a detainee, plaintiff's constitutional rights flowed from the due process guarantees of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979).

24

Plaintiff states no facts that would give rise to a claim under the Due Process Clause of the Fourteenth Amendment; therefore, he fails to state a claim upon which relief may be granted.

Likewise, plaintiff has failed to allege either an intent to discriminate or unequal treatment that would give rise to an equal protection claim.  The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  This "Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir. 1993) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985)).  To maintain an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001).  Plaintiff makes no such allegation.

Accordingly, plaintiff's Eighth and Fourteenth Amendment claims are subject to dismissal.

### B. Official Capacity Claims

To the extent that plaintiff sues Dr. Samuel Prather, in his official capacity as an employee of a state medical school, Prather is entitled to Eleventh Amendment immunity.[12]  *See* Pennhurst State

---

12 In an Order signed December 28, 2010, the Court found that Dr. Freeman was entitled to Eleventh Amendment Immunity.  (Docket Entry No.37).

School & Hospital v. Halderman, 465 U.S. 89, 101-02, 104 S.Ct. 900, 909 (1984).  *See also* Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358 (1991); Delahoussaye v. City of New Iberia, 937 F.2d 144, 146 (5th Cir. 1991).  Defendant Prather, therefore, is entitled to dismissal of plaintiff's claims for monetary damages brought against him in his official capacity.

To the extent that plaintiff sues defendants Hall and Kelley in their official capacity as employees of the City of Houston, plaintiff brings suit against the City of Houston.  *See* Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000).  A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.  Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038 (1978).  A municipality may not be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability.  Id. at 691, 98 S.Ct. at 2036. Municipal liability under a § 1983 claim requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom. Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010).

For a municipality to be liable on account of its policy, the plaintiff must show that either (1) the policy itself violated federal law and authorized or directed the deprivation of federal rights or (2) the policy was adopted or maintained by the

municipality's policymakers "with 'deliberate indifference' as to its known or obvious consequences. . . . A showing of simple or even heightened negligence will not suffice." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407, 117 S.Ct. 1382, 1390 (1997). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 410, 117 S.Ct. at 1391.

Plaintiff does not claim in his verified complaint that Kelley or Hall acted in any way pursuant to a City of Houston policy or practice that would subject the City of Houston to suit. (Docket Entries No.60, No.63). In his response to their motion for summary judgment, plaintiff claims that Hall and Kelley violated official policy with respect to the City's policy regarding body cavity searches. (Docket Entry No.85, page 12). Plaintiff does not allege that the official policy maker or a policy or custom with respect to body cavity searches caused the deprivation of his constitutional right. Moreover, he fails to show that Hall or Kelley violated his constitutional rights. Therefore, he fails to state a claim against the City of Houston that would subject it to municipal liabilty. Accordingly, his claims against Hall and Kelley in their official capacity as City of Houston police officers, are subject to dismissal.

## C. State Law Claims

When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded

on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims. *See* 28 U.S.C. § 1367(c)(3), (4); International Coll. of Surgeons, 522 U.S. 156, 172-73, 118 S.Ct. 523, 533 (1997); Brown v. Southwestern Bell Tel. Co., 901 F.2d 1250, 1255 (5th Cir. 1990). The Supreme Court has counseled that a court should decline jurisdiction "'if the federal claims are dismissed before trial.'" Robertson v. Neuromedical Ctr., 161 F.3d 292, 296 (5th Cir. 1998) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)). Moreover, in the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)). The rule, however, is "'neither mandatory nor absolute.'" Smith v. Amedisys Inc., 298 F.3d 434, 447 (5th Cir. 2002) (quoting Batiste v. Island records, Inc., 179 F.3d 217, 227 (5th Cir. 1999)).

In this case, plaintiff's federal claims against defendants are subject to summary judgment, leaving only his claims of assault and battery, medical malpractice, gross negligence, and informed consent, which sound in state law. The Court notes that plaintiff does not identify in his original pleadings the conduct he claims forms the basis of his state law claims with respect to any defendant, although he attempts to do so in his response to their motion for summary judgment. (Docket Entries No.60, No.63, No.84, No.85). As defendants Hall and Kelley note, plaintiff has alleged an assault and

battery were committed but he fails to plead facts in his original pleadings to indicate which defendant committed the assault and battery. (Docket Entry No.78, page 18). Plaintiff has also failed to plead any facts giving rise to a negligence or gross negligence claim against defendants Hall and Kelley. (Id., pages 20-21). Plaintiff again attempts to plead such facts in his response to the motion for summary judgment. (Docket Entry No.85).

Defendants Prather and Freeman acknowledge that plaintiff has brought claims for lack of informed consent, medical malpractice, gross negligence, and assault but they assert that plaintiff has not identified the laws under which he brings such claims. (Docket Entry No.80, page 21). Defendants Prather and Freeman, therefore, have presumed that plaintiff intended to bring these claims under state law and have attempted to address such claims accordingly. Plaintiff again attempts to respond to defendants' presumptions in his response to their motion for summary judgment. (Docket Entry No.84).

Given the state of these pleadings, the many opportunities plaintiff has been afforded to amend his pleadings, and the fact that plaintiff's federal claims are being dismissed before trial, the Court finds that the factors of judicial economy, convenience, fairness, and comity suggest that this court should decline to exercise jurisdiction over the remaining state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619 (1988); Metro Ford Truck Sales, Inc. v. Ford Motor Co., 145 F.3d 320, 328 (1999). Therefore, plaintiff's state law claims will be dismissed without prejudice to plaintiff refiling the same in an

appropriate state court.

<div align="center">

V.  CONCLUSION

</div>

Based on the foregoing, the Court ORDERS the following:

1.   Defendants David Hall and Patrick Kelley's Motion for Summary Judgment (Docket Entry No.78) is GRANTED.

2.   Defendants Christopher Freeman and Samuel Prather's Motion for Summary Judgment (Docket Entry No.80) is also GRANTED.

3.   All federal claims against defendants Hall, Kelley, Freeman, and Prather are DISMISSED WITH PREJUDICE.

4.   All state law claims against defendants Hall, Kelley, Freeman, and Prather are DISMISSED WITHOUT PREJUDICE to plaintiff refiling these claims in an appropriate state court.

5.   Plaintiff's motion for an entry of default against defendants is DENIED.  (Docket Entry No.76).

6.   All other pending motions, if any, are DENIED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____July 31_____, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE